IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| C.H. B/N/F J.H., § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No.  No. 10-CA-0114-XR |
| § | |
| Dr. John M. Folks, Superintendent as § | |
| Representative of NORTHSIDE § | |
| INDEPENDENT SCHOOL DISTRICT, § | |
| Barry Perez, Principal, and Frankie Gray, § | |
| Vice Principal, Pease Middle School § | |
| § | |
| *Defendants*. § | |

**ORDER ON MOTION TO DISMISS**

On this date, the Court considered Defendants' Second Motion to Dismiss (Docket No. 13).

**I. Background**

Because the Court is considering a motion to dismiss under Rule 12(b)(6), the Court sets forth the allegations in the Plaintiff's Complaint as true.  In 2008, C.H. was a student at Pease Middle School in Northside Independent School District (District). (Pl.'s 1st Am. Compl. p. 2). The events that gave rise to this suit occurred when C.H. entered the school restroom and went into one of the stalls. (Pl.'s 1st Am. Compl. p. 2).  While C.H. was in the stall, a school custodian allegedly observed C.H. marking on the inside door of the stall. (Pl.'s 1st Am. Compl. p. 2).  The custodian had been positioned above the panels in the bathroom ceiling, looking down into the stalls. (Pl.'s 1st Am. Compl. p. 2).  The custodian was able to see into both the boys' and girls' restrooms. (Pl.'s 1st Am. Compl. p. 2).  After C.H. exited the restroom, the custodian followed him into the hallway. (Pl.'s 1st Am. Compl. p. 2).  The custodian put his hand into C.H.'s pockets. (Pl.'s 1st Am. Compl.

1

p. 2). C.H. was subsequently arrested and charged with a felony, but the prosecutor declined to prosecute the case. (Pl.'s 1st Am. Compl. p. 2).

This suit was initiated on C.H.'s behalf against the District (by and through John M. Folks, its superintendent), Barry Perez, the Principal of Pease Middle School, and Frankie Gray, the Vice Principal of Pease Middle School. In his original complaint, C.H. asserted that the action arose "under the Fourth Amendment of the U.S. Constitution and Section 1983" and under the Texas Constitution. Plaintiff also asserted several state-law tort claims.

On May 24, 2010, Defendants filed a motion to dismiss, asserting numerous bases for dismissal of Plaintiff's claims. (Docket no. 8). On June 8, 2010, Plaintiff filed a First Amended Complaint, which contains the same claims as before, but adds two paragraphs intending to deal with the District's assertion that Plaintiff had failed to identify an official policy that would render it liable. (Docket No. 11). Plaintiff also submitted a response to Defendants' motion to dismiss on June 11, 2010. (Docket No. 12). Defendants filed a second motion to dismiss on June 22, 2010. (Docket No. 13). On July 12, 2010, Plaintiff responded to Defendants' second motion to dismiss. (Docket No. 16).

## II. Legal Standard

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of [each] claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(1). The purpose of Rule 8 is to require parties to state their claims with sufficient clarity "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests' . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party against whom a claim

is brought to move to dismiss the pleading for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law. FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Additionally, the facts are construed favorably to the plaintiff. *Id.*

To survive a Rule 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations must be sufficient to "raise a right to relief above the speculative level." *Id.* A well-pleaded complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.* at 556.

### III. Analysis

Defendants' Second Motion to Dismiss seeks dismissal of each of Plaintiff's claims. However, Plaintiff's Amended Complaint is somewhat vague concerning the nature of the claims asserted. For example, Plaintiff states that "[t]his is an action under Section 42 U.S.C. Sec. 1983 and the Fourth Amendment of the United States Constitution and the Constitution of the State of Texas." It is not entirely clear whether Plaintiff is asserting only a claim under the Fourth Amendment via section 1983. However, because that is the only constitutional amendment cited, and because Plaintiff has not disputed Defendant's characterization of the claims, the Court will limit its analysis to the Fourth Amendment. Further, Plaintiff generally references the Texas Constitution, but fails to point to any specific provision of the Texas Constitution that any Defendant allegedly violated or that permits her to bring suit.

Thus, it appears that Plaintiff claims that Defendants sexually harassed C.H. and conducted unreasonable searches in violation of the Fourth Amendment by having the custodian observe C.H. in the bathroom stall and detain and search him afterward. Plaintiff also brings state-law claims of false imprisonment[1] (against the District by and through Folks), intentional infliction of emotional distress (against "Defendants"), invasion of privacy (against "Defendants"), malicious prosecution (against "Defendants"), and negligent hiring and employment (against the District by and through Folks). Though the Amended Complaint is unclear whether the individual defendants are sued in their official or individual capacities, Plaintiff states in the Response to the Second Motion to Dismiss that the claims are being asserted against them in both capacities.

In their second motion to dismiss, Defendants argue the following: 1) Plaintiff fails to state a § 1983 claim against the District, 2) to the extent Perez and Gray are sued in their official capacities, the claims should be dismissed as duplicative of the claims against the District, 3) to the extent they are sued in their individual capacities, Perez and Gray are entitled to qualified immunity, 4) Plaintiff's "state constitutional claim for actual damages, exemplary damages, and attorney's fees are not recognized under Texas law," 5) sovereign and governmental immunity bar Plaintiff's state-law tort claims, and 6) Plaintiff's state-law tort claims against the individual defendants in their individual capacities are barred by the Texas Tort Claims Act's election-of-remedies provision.

**A. Section 1983 claim against the District**

Plaintiff's First Amended Complaint asserts a section 1983 cause of action against the District, claiming that C.H. was sexually harassed and searched in violation of his Fourth

---

1 Again, it is not clear whether the false imprisonment claim is brought under the Fourth Amendment via section 1983 or under a state-law tort theory. The Court will analyze it as both.

Amendment rights.  A school district cannot be liable under § 1983 on the theory of respondeat superior, and thus will not be liable simply because it employs a tortfeasor.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  "Isolated unconstitutional actions by municipal employees will almost never trigger liability."  *Id*. (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)).  The District moves for dismissal of all section 1983 claims against it, arguing that Plaintiff has failed to establish a basis for liability.

Plaintiff may proceed against the District on two § 1983 theories.  First, Plaintiff may attempt to demonstrate the existence of an official custom or policy.  To establish liability under this theory, a plaintiff must prove three elements: (1) the existence of an official policy or custom, (2) a policymaker, and (3) "a violation of constitutional rights whose 'moving force' is the policy or custom."  *Piotrowski*, 237 F.3d at 578.  Under the second theory, Plaintiff can show that he was injured as a result of the District's "deliberate indifference" to his constitutional rights.  *See City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989).

An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *K.T. v. Natalia I.S.D.*, No. SA-09-CV-285-XR, 2010 WL 1484709 (W.D. Tex. Apr. 12, 2010) (quoting *Piotrowski* 237 F.3d at 579).[2]  A policy becomes official when it results from the decision or acquiescence of "those officials or governmental bodies who speak with final policymaking authority for the [governmental

---

[2] Plaintiff has failed to show the existence of a custom or that the Board had actual or constructive knowledge of its existence because he has pointed to only this single incident.  *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 (5th Cir. 2003).

unit]." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Under Texas law, final policymaking authority in a public school district rests with the district's Board of Trustees. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) ("Texas law unequivocally delegates to the Board 'the exclusive power and duty to govern and oversee the management of the public schools of the district.'")(citing TEX. EDUC. CODE. § 11.151(b)). In order to establish that the policy was a "moving force" behind the constitutional violation, the plaintiff must prove a direct causal link between the policy and the violation. *Piotrowski*, 237 F.3d at 580. "The description of a policy or custom and its relation to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997).

In this case, plaintiff alleges that the school custodian illegally searched and sexually harassed C.H. in violation of the Fourth Amendment. (Pl.'s 1st Am. Compl. p. 2). Plaintiff alleges that "the custodian admitted to spying into the boys' restroom at the direction of the School Principal, Barry Perez." (Pl.'s 1st Am. Compl. p. 3). In the response to the motion to dismiss, however, Plaintiff states that "[t]he custodian was assigned to watch the stalls by the principal and vice principal of the school." (Pl.'s Response p. 3). Plaintiff further alleges that "[t]he actions of the custodian were sanctioned by the school's top administrator, the principal" because "[o]therwise, the custodian would have been sanctioned or terminated." (Pl.'s 1st Am. Compl. p. 3). The Principal, however, is not the policymaker for the District, and thus these allegations do not establish a policy or custom by the District's policymaker.

Plaintiff further alleges that Folks, the Superintendent, "is responsible for the actions of the employees in the District" and that he "took no action against the principal or the custodian." (Pl.'s

1st Am. Compl. p. 3). Plaintiff further alleges that Folks, Perez, and Gray "condoned the unreasonable search and were responsible for the actions of [the custodian]." (Pl.'s 1st Am. Compl. p. 3). Plaintiff states that "[r]ather than disciplining the employee for the search, [an unspecified] Defendant had the student arrested and charged with a felony." (Pl.'s 1st Am. Compl. p. 3). Plaintiff also claims that Folks, as Representative of the District "intentionally discriminated against [C.H.] by allowing the unreasonable searches to continue and by condoning the arrest of the student" and "knew or should have known of the harassment, yet failed to take prompt remedial action." (Pl.'s 1st Am. Compl. p. 4). Plaintiff alleges that "Defendant sexually harassed Complainant, as described above, in violation of the child's constitutional rights" and that "Folks, Superintendent as Representative of Northside Independent School [District], harassed Complainant on the basis of sex with malice or with reckless indifference to the federal-protected rights of Complainant." (Pl.'s 1st Am. Compl. p. 4). Again, these allegations fail to establish the required policy choice by a District policymaker. Generally, the Board of Trustees is the policymaker, while the Superintendent is simply an administrator. Plaintiff alleges that Superintendent Folks had "final responsibility for the discipline of employees." However, the required policy must relate to the alleged illegal surveillance – the failure to discipline after the fact could not have been a moving force behind an alleged violation that had already occurred.

Plaintiff alleges that "[t]he Board of Trustees sanctioned the actions otherwise the principal and the custodian would have been terminated for their outrageous behavior" and that "Northside I.S.D. Board of Trustees has an 'unwritten' policy that allows the privacy of students to be compromised for the protection of school property." (Pl.'s 1st Am. Compl. p. 3). Plaintiff also asserts that the "Board of Trustees has an unwritten policy that allowed this discrimination to occur

without any repercussions to the perpetrators of sexually indecent behaviors on a school campus." (Pl.'s 1st Am. Compl. p. 4).

The District claims that Plaintiff's allegations of a "unwritten policy" are cursory and "fall short of the type of conduct required to support a Section 1983 claim against the District." (Def.'s 2nd Mot. to Dismiss p. 3). This Court encountered similar allegations in *K.T. v. Natalia I.S.D.*, 2010 WL 1484709. In that case, the plaintiffs claimed that the child, K.T., had been enduring ongoing harassment by her classmates. *Id*. at *1. Specifically, the plaintiffs' complaint stated that the district had a "pervasive unwritten policy that allowed discrimination and harassment based on race" and that "it is the unwritten policy of Natalia I.S.D. to ignore discrimination that [sic] has permitted continued discrimination and retaliation against Plaintiffs." *Id*. at 2-3 (inner quotations omitted). This Court held that these allegations were not sufficient to state a claim under § 1983, finding that such "[s]ubjective belief[s] [and] conclusory statements will not suffice to prevent a motion to dismiss." *Id*. at 3 (citing *Henrise v. Horvath*, 45 Fed. Appx. 323 (5th Cir. 2002)).

Similarly, the Court finds that the Plaintiff has failed to show an official policy promulgated by a policymaker or a final decision by a person or entity with final policymaking authority for the District that was the moving force behind the alleged violations. Plaintiff's allegations of an "unwritten policy" of the Board of Trustees "that allows the privacy of students to be compromised for the protection of school property" are nearly identical to the conclusory allegations held insufficient in *Natalia*. To the extent Plaintiff is attempting to establish that the Board of Trustees ratified the allegedly illegal activity by failing to terminate any of the school employees allegedly involved, the Fifth Circuit has rejected such theories except in "extreme circumstances," which are not present here. *See Peterson v. City of Forth Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009); *see*

*also Gardner v. Hill*, 195 F. Supp. 2d 832, 837 (E.D. Tex. 2001) ("The Fifth Circuit, however, has refused to declare that a municipality ratified an officer's misconduct simply because it failed to punish him for those actions on one occasion and the court has refused to infer an official policy from a single isolated failure to punish officer misconduct.") (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).

With regard to a deliberate indifference theory, Plaintiff's allegations that Folks "knew or should have known of the harassment, yet failed to take prompt remedial action" and "harassed Complainant on the basis of sex with malice or with reckless indifference to the federal-protected rights of Complainant" are conclusory and, again, fail to establish deliberate indifference by the Board of Trustees. There are no factual allegations that the Board knew that the custodian had been directed to observe the students in the bathroom, approved of such actions, or was otherwise deliberately indifferent to students' privacy rights. Plaintiff alleges that the District, by and through Folks, "willfully detained Complainant" and that the detention was "without legal authority or justification and the product of an illegal search." Again, however, Plaintiff fails to establish an action by a policymaker or deliberate indifference that was a moving force behind the alleged violation. Therefore, Plaintiff's § 1983 claims against the District are DISMISSED.

**B. Section 1983 official-capacity claims against Barry Perez and Frankie Gray**

Defendants contend that the § 1983 claims against Principal Perez and Vice Principal Gray in their official capacities should be dismissed as a matter of law. (Defendants' 2nd Mot. to Dismiss p. 4). Plaintiff responds that he has a § 1983 "claim against the individual defendants, in their official or representative capacities and Defendants do not have qualified immunity." Plaintiff then discusses qualified immunity at length. Qualified immunity, however, is only applicable to claims

9

brought against individuals in their individual capacities. "Suing a government official in his official capacity is another way of pleading against the entity of which the official is an agent." *Brittany B. v. Martinez*, 494 F. Supp. 2d 534, 539 (W.D. Tex. June 28, 2007) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Therefore, an official capacity claim must be treated as a suit against the governmental entity, and governmental entities do not enjoy qualified immunity. *Id*. However, because Plaintiff has already asserted § 1983 claims against the District, her claims against Perez and Gray in their official capacities are needlessly duplicative of the claims against the District. For this reason and because Plaintiff fails to state a claim against the District, this Court will DISMISS Plaintiff's § 1983 claims against Perez and Gray in their official capacities as redundant of the § 1983 claims against the District.

**C.  Qualified immunity – individual capacity claims against Perez and Gray**

When a public official is sued under § 1983 and claims qualified immunity, the plaintiff must comply with a "heightened pleading" standard. *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995). This standard requires more than conclusory assertions. "It requires claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). Of course, for Rule 12(b)(6) purposes, this heightened pleading framework does not alter our acceptance of plaintiff's allegations as true; on the other hand, it does require specific facts and not merely conclusions.

Defendants argue that Principal Perez and Vice Principal Gray are entitled to qualified immunity. Government officials are entitled to qualified immunity "when they are acting within their discretionary authority and their conduct does not violate clearly established authority or constitutional law of which a reasonable person would have known." *Gates v. Texas Dep't. of*

*Protective & Reg. Servs.*, 537 F.3d 404, 418 (5th Cir. 2008) (inner citations omitted). In a qualified immunity analysis, the court first determines whether the facts alleged by the plaintiff establish a violation of a constitutional right. *Milligan v. City of Slidell*, 226 F.3d 652, 654 (5th Cir. 2000). If the court determines that a constitutional violation has occurred, the court then considers whether the constitutional right was clearly established. *Id*. "For a right to be clearly established, there does not have to be a prior case directly on point, but the unlawfulness of the precipitating acts must be apparent in light of the existing law." *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir. 1995). If the right is clearly established, the court determines whether the defendant's conduct was objectively reasonable. *Id*. Even if a school official violates a student's rights, the official is entitled to qualified immunity "if reasonable public officials could differ on the lawfulness of their actions." *Id*.

Plaintiff bases his claims on the actions of the custodian, and thus he relies on supervisory liability for his claims against Perez and Gray. To support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc). In his Complaint, he states that the custodian "admitted to spying into the boys' restroom at the direction of the School Principal, Barry Perez." (Pl.'s 1st Am. Compl. p. 3). This allegation, if true, is sufficient to link Perez to the custodian's actions. The Complaint itself does not directly link Vice Principal Gray to the custodian's actions, however. Rather, it makes only conclusory statement that "Defendants, John M. Folks, Superintendent, and Barry Perez, Principal, and Frankie Gray, vice principal, condoned the unreasonable search and were responsible for the actions of his [*sic*] employee. Rather than disciplining the employee for the search, [unspecified] Defendant had the student arrested and

11

charged with a felony." *Id.*  In the Response to the motion, however, Plaintiff states that "the custodian was assigned to watch the stalls by the principal and vice principal of the school." (Pl.'s Response p. 3).  Assuming this is true, it would sufficiently link Vice Principal Gray to the custodian's actions.

C.H. claims his Fourth Amendment rights were violated when the custodian observed him in the restroom stall, and when the custodian searched his pockets. "The central inquiry under the Fourth Amendment is whether a search or seizure is reasonable under all the circumstances of a particular governmental invasion of a person's personal security. *Milligan*, 226 F.3d at 655 (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).  In determining the reasonableness of a search or seizure, courts must "balance the governmental interest against the invasion which the search or seizure entails. *Id.*  (citing *Terry*, 392 U.S. at 20-21).

In *Porter*, the Fifth Circuit stated that:

> Under ordinary circumstances, a search of a student by a teacher or other school official will be justified 'at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.  Such a search will be permissible in its scope when the measures adopted are reasonable [sic] related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*Porter*, 393 F.3d at 622 (quoting *TLO*, 469 U.S. at 341-42).

C.H. must first demonstrate that he had a reasonable expectation of privacy within the stall. Courts have recognized "that an occupant of a toilet stall in a public restroom may have a reasonable expectation of privacy against clandestine police surveillance of the interior of the stall." *United*

*States v. Delaney*, 52 F.3d 182, 188 (8th Cir. 1995).[3]  "In a . . . public restroom, when the occupant shuts the door behind him, he manifests a subjective expectation of privacy [while] in the . . . stall." *Hancock v. Dallas Cty. Cmty. Coll.*, No. Civ.A.3:03-CV-1417-N, 2004 WL 527170, at *3 (N.D. Tex. Mar. 17, 2004); *see also Smayda v. United States*, 352 F.2d 251, 257 (9th Cir. 1965).  Such an expectation of privacy is objectively reasonable as well because "[m]ost persons using public restrooms have no reason to suspect that a hidden agent of the state will observe them." *Kroehler v. Scott*, 391 F. Supp. 1114, 1118 (E.D.Pa. 1975); *see also United States v. White*, 890 F.2d 1012, 1015 (8th Cir. 1989) ("[A]n occupant of [a public restroom] stall would reasonably expect to enjoy such privacy as the design of the stall afforded.") (inner citation omitted).

Although the previously cited cases have recognized a clearly established right to privacy behind the door of a public restroom stall, these cases did not involve searches of stalls in public school restrooms.  Students are entitled to a lesser expectation of privacy while at school.  However, "the legality of school searches depends upon the 'reasonableness, under all the circumstances, of the search.'" *Porter*, 393 F.3d at 622 (quoting *TLO*, 469 U.S. at 341).  In order for a school search to be reasonable it must be : (1) justified at its inception, and (2) reasonably related in scope to the circumstances justifying the search.  *Id*. (inner citations omitted).

In the present case, if Perez and Gray authorized the school custodian to climb into the ceiling and peer into the school restroom stalls in order to catch students who were attempting to vandalize the stalls, as alleged, they would not be entitled to qualified immunity.  This search was not justified at its inception because there were no reasonable grounds to suspect that the custodian's

---

3 This expectation is not absolute, however, and there is no reasonable expectation of privacy to the extent that the design of the stall (including gaps in the doors) allows others to see in without placing themselves in "unexpected" positions.  *Id.*

13

search from the ceiling would produce evidence that C.H. was entering the restroom in order to vandalize the stall.  The record does not show that C.H. had a history of vandalizing or destroying school property or that he had been suspected of marking the restroom stalls on prior occasions. Nothing in the record suggests that the custodian had reason to believe that C.H. was entering the restroom with the intention to violate the law or the rules of the school.

Further, even if justified by a chance of finding evidence of wrongdoing, this search was not permissible in its scope because it was excessively intrusive in light of the nature of the suspected infraction.  In *Safford Unified Sch. Dist. No. 1 v. Redding*, the Supreme Court found that the strip search of a 13-year-old middle school student was unreasonable because "the content of the suspicion failed to match the degree of intrusion." - - - U.S. - - -, 129 S. Ct. 2633, 2642, 174 L. Ed. 2d 354 (2009).  In that case, the student was suspected of possessing common pain relievers at school.  *Id*.  School officials instructed the student to strip down to her underwear and pull out her bra and the elastic band on her underwear.  *Id*. at 2641.  The Court pointed to the vulnerabilities and sensitivities frequently experienced by adolescents in finding that the student's expectation of privacy against such a search was both subjectively and objectively reasonable.  *Id*.  Similarly, in the current case, the custodian's attempt to prevent vandalism by peering into restroom stalls was excessively intrusive.  In light of the case law concerning searches of public restrooms and the Supreme Court's stance on the reasonableness of strip searches, this Court finds that C.H. had a clearly established expectation of privacy behind the closed door of the restroom stall.

Because C.H.'s clearly established constitutional right was violated, the Court now determines whether the Defendants' actions were objectively reasonable.  The Court must therefore determine whether a public official in the same position as the Defendants could have reasonably

believed under the clearly established law and information available that directing the custodian to peer down into the restroom stall was lawful. The law was sufficiently well established in 2008 for Defendants to have known that authorizing surveillance of the bathroom stalls was not lawful. By 2004 at the latest, there was a consensus of authority that a person who enters a public restroom stall is entitled to the degree of privacy that the stall's design reasonably affords. *See Hancock*, 2004 WL 527170 at *4 (finding the right to expectation of privacy in closed restroom stall to be clearly established). Though in certain situations an individual's expectation of privacy in a public restroom stall may be overcome by a reasonable belief that a crime is taking place, *see e.g.*, *Cook v. State*, 762 S.W.2d 714 (Tex. App.–Houston [1st Dist.] 1988, pet. ref'd), there is no indication in the present case that Defendants had a reasonable belief that a crime was taking place when C.H. entered the restroom or the stall or when Defendants allegedly authorized the surveillance. Therefore, Defendants' actions were not objectively reasonable.

Taking Plaintiff's allegations as true, Defendants violated a clearly established constitutional right when the custodian peered into the restroom stall. If Plaintiff's allegations are proven to be true, Principal Perez and Vice Principal Gray would not be entitled to qualified immunity with regard to the search of the restroom stall. Further, as a result of the allegedly illegal surveillance, the custodian's search of C.H.'s pockets would also have been a violation of C.H.'s Fourth Amendment rights, as it would not have been justified at its inception. Plaintiff fails, however, to tie the search of his pockets in any manner to any action or inaction of Perez and Gray. Therefore, at this point, Plaintiff fails to allege sufficient facts to implicate their supervisory liability for the pocket search.

**D. State-law tort claims**

Plaintiff also brings state-law claims of false imprisonment (against the District by and through Folks), intentional infliction of emotional distress (against "Defendants"), invasion of privacy (against "Defendants"), malicious prosecution (against "Defendants"), and negligent hiring and employment (against the District through Folks). The District argues that the tort claims asserted against it are barred by governmental immunity. The District further asserts that the tort claims brought against the individual defendants must be dismissed pursuant to the Texas Tort Claims Act's election-of-remedies provision.

<u>1. The District's governmental immunity</u>

It is well settled that the State of Texas and its governmental units maintain sovereign and governmental immunity from claims brought by citizens of the State.[4] The Texas Tort Claims Act does not create a cause of action against the State and its governmental units; it merely waives sovereign immunity as a bar to suit that would otherwise exist. *See* TEX. CIV. PRAC. & REM. CODE § 101.025(a) ("Sovereign immunity is waived and abolished to the extent of liability created by this chapter."). Thus, the Texas Tort Claims Act (TTCA) provides a statutory waiver of governmental immunity in limited circumstances. According to section 101.021 of the Texas Tort Claims Act:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment if:

---

[4] Sovereign immunity refers to the State's immunity from suit and liability and protects the State and its divisions, while governmental immunity protects political subdivisions of the State, including counties, cities, and school districts. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003).

16

>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; *and*
>
>> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

*Id*. at § 101.021 (emphasis added). However, the waiver of immunity is much narrower with regard to school districts – governmental immunity is waived only with regard to motor vehicles. *Id*. at § 101.051 ("Except as to motor vehicles, this chapter does not apply to a school district or to a junior college district."); *Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004 (5th Cir. 1992). Additionally, "[t]rustees and agents of a school district, while acting in an official capacity, enjoy the same governmental immunity as does the school district." *Bates v. Dallas Indep. Sch. Dist.*, 952 S.W.2d 543, 551 (Tex. App.–Dallas 1997, writ denied) (inner citations omitted). Further, there is no wavier of immunity for intentional torts. TEX. CIV. PRAC. & REM. CODE § 101.057(2).

As Plaintiff acknowledges, all claims but the negligent hiring claim asserted against the District are intentional torts, for which the District retains its governmental immunity.[5] Therefore, the Plaintiff's claims of false imprisonment, intentional infliction of emotional distress, invasion of

---

5 Plaintiff states in the Response that "the acts of Respondents were not acts of negligence, but rather they were intentional acts" and that they "violated several laws including tort and Family Code statutes." (Pl.'s Response p. 9-10). To the extent that Plaintiff is arguing that the individual's actions were *ultra vires* and thus Plaintiff may sue them in their official capacities, that argument fails because Plaintiff is pursuing monetary damages for past injury, not equitable relief. *See City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009).
  Plaintiff also refers to United States Supreme Court precedent under § 1983 and argues that Defendants should have known that the violation of privacy was a violation of the child's civil rights, both of which are irrelevant to the issue of whether Texas has chosen to waive its sovereign immunity for state-law claims.

privacy, and malicious criminal prosecution against the District (and Perez and Gray in their official capacities) are dismissed. With regard to the Plaintiff's negligent hiring claim, Plaintiff does not (and could not) claim that the injuries arise from the operation or use of a motor-driven vehicle, and thus governmental immunity is not waived for this claim.[6] Plaintiff's negligent hiring claim against the District, Perez, and Gray, in their official capacities, is dismissed.

2. Section 101.106(e)

Section 101.106(e) of the TTCA provides that "[i]f a suit is filed under this chapter against both a government unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e). The Texas Supreme Court has construed the phrase "under this chapter" to mean all state-law tort theories against a governmental unit, including intentional torts and other torts expressly exempted from the Act's waiver of immunity provisions. *Mission Consolidated ISD v. Garcia*, 253 S.W.3d 653 (Tex. 2008) ("Because the [TTCA] is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under the [TTCA].'"). The Tort Claims Act's election-of-remedies provision "is designed to force a plaintiff to decide at the outset whether an employee acted independently, and is thus solely liable, or whether she acted within the general scope of her employment so that the governmental unit is vicariously liable." *City of Arlington v. Randall*, 301 S.W.3d 896, 903 (Tex. App.–Fort Worth 2009, pet. filed). A plaintiff's election is

---

6 Plaintiff appears to overlook the use of the conjunctive "and" in section 101.021, arguing that the Defendants would be liable to the claimant under Texas law. The waiver of immunity requires *both* that the injury be proximately caused by the operation or use of a motor-driven vehicle or equipment *and* that the employee would be personally liable under Texas law.

irrevocable. A governmental entity perfects the statutory right to a dismissal of its employees upon the filing of a motion to dismiss. *Id.*

Plaintiff has asserted common-law tort claims against both the District and employees of the District, the claims are "under the" Tort Claims Act for purposes of section 101.106(e), and the District expressly moves that the Court dismiss Plaintiff's state-law tort claims against the individual defendants in their individual capacities pursuant to § 101.106(e). Accordingly, section 101.106(e) requires dismissal of all state-law tort claims against the individual employees. Therefore, to the extent that Plaintiff has alleged any state-law tort claims against Perez and Gray in their individual capacities, such claims are DISMISSED.

## F. Texas Constitution claims

Plaintiff generally asserts that the action is brought under "the Constitution of the State of Texas," but does not identify any specific constitutional provision. Defendants move for dismissal of all claims under the Texas Constitution, arguing that Plaintiff is barred from suing a governmental entity for money damages for general constitutional torts under the Texas Constitution. (Def.'s 2nd Mot. to Dismiss p. 7). The Court agrees. "Texas common law does not recognize a cause of action in tort for money damages for a violation of the Texas Constitution." *Richards v. Texas A & M Univ. Sys.*, 131 S.W.3d 550, 555 (Tex. App.–Waco 2004, pet. denied); *see also City of Beaumont v. Bouillion*, 896 S.W.2d 143, 150 (Tex. 1995) (concluding that Texas Constitution did not provide private cause of action for damages with regard to speech and assembly causes). Accordingly, Plaintiff's claims under the Texas Constitution are DISMISSED.

## Conclusion

Defendants' Second Motion to Dismiss (docket no. 13) is GRANTED IN PART AND

DENIED IN PART.

Plaintiff's § 1983 claims against the District and Perez and Gray in their official capacities are DISMISSED.

Plaintiff's state law claims against the District and Perez and Gray in their official capacities are DISMISSED.

Plaintiff's state law claims against and Perez and Gray in their individual capacities are DISMISSED.

Defendants' motion is DENIED IN PART with regard to Plaintiff's claims under the Fourth Amendment pursuant to Section 1983 against Perez and Gray in their individual capacities related to the surveillance of the bathroom stall.  The motion is GRANTED IN PART with regard to the pocket search. Thus, the only remaining claim is a claim under § 1983 against Perez and Gray, in their individual capacities, for violation of the Fourth Amendment with regard to the surveillance of C.H. in the restroom stall.

It is so ORDERED.

SIGNED this 17th day of August, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE